**UNITED STATES of America**

v.

**Ronald SHEPARD, Appellant.**

**No. 73–1743.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1974.

Decided July 17, 1975.

Lois J. Schiffer, Washington, D. C.,
with whom John S. Hoff, Washington,

D. C. (both appointed by this Court), was on the brief for appellant.

Michael G. Scheininger, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, John J. Mulrooney and Roger M. Adelman, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

1. The First Count of the Indictment charged:

On or about June 29, 1972, within the District of Columbia, RONALD SHEPARD and CHARLES HOWARD, JR., wilfully and unlawfully and with felonious intent by force and violence and by intimidation, did take from the person and presence of Garrett E. Ware, $5,228.00 in money, belonging to and in the care, custody, control, management and possession of Maryland State Federal Savings and Loan Association, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

(Violation of Title 18, U.S.Code, Section 2113(a))

This charged a violation of the first paragraph of § 2113(a) which provides:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;

* * * * *

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. The Second Count of the Indictment charged:

On or about June 29, 1972, within the District of Columbia, RONALD SHEPARD and CHARLES HOWARD, JR., while armed with a dangerous weapon, that is, a pistol, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Garrett E. Ware, property of Maryland State Federal Savings and Loan Association, *the deposits of which were then insured by the Federal Deposit Insurance Corporation,* of the value of about $5,228.00, consisting of $5,228.00 in money.

(Violation of Title 22, D.C.Code, Section 2901 and 3202)

(Emphasis added). D.C.Code § 22–2901 (1973) provides:

Whoever by force or violence, whether against resistance or by sudden or stealthy

Opinion for the court filed by Circuit Judge MacKINNON.

Concurring opinion filed by Chief Judge BAZELON.

**MacKINNON, Circuit Judge:**

Appellant was indicted on October 13, 1972, for robbery of a federally insured state savings and loan association (18 U.S.C. § 2113(a)),[1] armed robbery (D.C. Code §§ 22–2901, 3202),[2] robbery (D.C.

seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years.

The allegation that appellant was "armed with a dangerous weapon" brings D.C.Code § 22–3202 into play:

*Committing crime when armed—Added punishment.*

(a) Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles)—

(1) may, if he is convicted for the first time of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment; and

(2) shall, if he is convicted more than once of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a minimum period of imprisonment of not less than five years and a maximum period of imprisonment which may not be less than three times the minimum sentence imposed and which may be up to life imprisonment.

There is nothing in these statutes which relates to the insurance of deposits by the Federal Deposit Insurance Corporation. That reference in the count charging the D.C.Code offense is pure surplusage, and the U.S. Attorney would have been well advised to delete it in its entirety for reasons which are all too apparent in this case. The insuring agency was incorrectly identified and the inclusion of "Federal" in the name of the Association was also incorrect.

Code § 22–2901) and assault with a dangerous weapon (D.C.Code § 22–502). The count charging the robbery of the savings and loan association was dismissed by the Government prior to the submission of the case to the jury. The jury found appellant guilty of armed robbery and assault with a dangerous weapon. The District Court sentenced appellant to four to twenty years' imprisonment on the armed robbery conviction and dismissed the assault with a dangerous weapon conviction. We affirm.

## I.

On June 29, 1972, two men wearing hats and nylon face masks and carrying pistols held up an office of the Maryland State Savings & Loan Association, located in the District of Columbia. They escaped with over $5,000.

Appellant was arrested in his home on August 1, 1972, on a warrant charging him with the July 21 armed robbery of the Colonial Storage Company (M.Tr. 67).[3] This offense was unrelated to the savings and loan (S&L) robbery. The affidavit for the warrant stated that a co-owner of the Storage Company had identified appellant's photograph as one of the participants in that robbery.

Upon being taken into custody, appellant was immediately given a *Miranda* warning (M.Tr. 23, 69, 95). He was then taken to the Robbery Squad office where he was again read his rights but refused to sign an acknowledgment form (Tr. 152–53, 173). After preliminary processing he was taken to a room for questioning and was read his rights a third time (M.Tr. 71, 96–97). Appellant never objected to being questioned or requested an attorney (Tr. 168). During the questioning, which began with inquiries concerning the Storage Company robbery, appellant voluntarily confessed to several other robberies, including the hold-up of the Maryland State Savings & Loan As-

sociation (M.Tr. 82, 86, 92). An FBI Special Agent was immediately brought into the interrogation and began to read appellant his rights a fourth time. Appellant interrupted, stating that he had "already heard this a couple of times today." (M.Tr. 106). He was then shown photographs taken by the S&L's surveillance camera and identified himself and one "Piggy" or Charles Howard as the robbers (M.Tr. 77). He described the circumstances of the robbery and his escape. At the conclusion of questioning appellant refused to execute a written confession although the FBI agent and a police officer had been taking notes throughout. (M.Tr. 89, 90, 114, 117).

Before trial, appellant moved to suppress his confession on the grounds that it was the fruit of an arrest made pursuant to an inaccurate warrant and that he had not effectively waived his rights against self-incrimination and to the presence of counsel. After a pre-trial hearing on this motion, the court held that the affidavit in support of the warrant was sufficient and did not indicate bad faith or false statements by the attesting officer (M.Tr. 133–35). The court also held that the confession was knowingly and voluntarily made after appellant had been informed of his rights and understood them. (M.Tr. 145–46).

The Government's proof at trial consisted of testimony by a customer and a bank teller concerning the events of the robbery, testimony establishing the validity of the photographs of the robbery, and appellant's oral confession that he was one of the robbers in the photographs. The confession was the only evidence linking appellant to the crime or the photographs.

A defense motion for judgment of acquittal at the close of the Government's case was denied (Tr. 202). The defense then recalled one of the police officers who took part in the interrogation. Aft-

3. "M.Tr." refers to the transcript of the hearing on the pre-trial motions to suppress appellant's confession (pp. 1–155). "Tr." refers to the transcript of the trial and sentencing (pp. 130–267).

er the officer testified he had concluded, based on his experience with narcotics users and based on appellant's statement at the time of the confession, that appellant was "on narcotics" (Tr. 206), the defense moved for a directed verdict (Tr. 209). However, there was no testimony as to when he had last taken any narcotics, and his own counsel had to concur in the testimony of the police officer that "he was coherent, he understood what was going on. He was responsive to the questions . . . ." (Tr.209) The officer also testified that his speech was not "slurred," he had no difficulty "controlling his body, in walking, standing and sitting" and that he did not "fall asleep" during the interrogation (Tr. 207). On this evidence the motion was denied (Tr. 209), and the defense then rested.

A senior Vice-President of the S&L Association had testified (Tr. 134–36) that its correct name was Maryland State Savings & Loan Association rather than Maryland State *Federal* Savings & Loan Association and that it was insured by the Federal Savings & Loan Insurance Corporation rather than the Federal Deposit Insurance Corporation as alleged in the indictment. The Federal Savings & Loan Insurance Corporation and the Federal Deposit Insurance Corporation are separate and distinct entities; the former insures savings and loan associations and the latter insures banks.

Prior to submitting the case to the jury, the Government elected to dismiss the S&L robbery count because of the discrepancies in the indictment (Tr. 216). A retyped indictment was prepared, eliminating the federal offense, and the remaining counts were submitted to the jury, which returned verdicts of guilty to armed robbery and assault with a dangerous weapon (Tr. 254–56). Appellant was sentenced on the armed robbery charge to a 4 to 20 year term with a

recommendation that he receive psychiatric treatment. Since the conviction for assault with a dangerous weapon is included within the armed robbery conviction,[4] the District Court dismissed the assault count (Tr. 266).

II.

Appellant was tried in District Court on an indictment which joined a federal offense with violations of the District of Columbia Code. The criminal jurisdiction of the U.S. District Court for the District of Columbia is enlarged by D.C. Code § 11–502, which provides:

In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:

\* \* \* \* \* \*

(3) Any offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.

Thus joinder in the indictment with the federal S&L robbery charge was a necessary prerequisite to the District Court's exercise of jurisdiction over the D.C. armed robbery and assault charges. Appellant argues that the District Court's jurisdiction over the local offenses lapsed when the federal count in the indictment was dismissed. We find, however, that such conclusion is contrary to the intent and purpose of the statute.

Prior to 1970 the U.S. District Court for the District of Columbia had exclusive jurisdiction over both the federal and the District of Columbia Code offenses charged against appellant. The Court Reform Act of 1970[5] shifted general jurisdiction over the D.C.Code offenses to the D.C. Superior Court.[6]

4. United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973).

5. District of Columbia Court Reform & Criminal Procedure Act of 1970, Pub.L. No. 91–358 (July 29, 1970), 84 Stat. 477.

6. The offense (June 29, 1972) and the indictment (Oct. 13, 1972) in this case both occurred subsequent to the completion of the division of jurisdiction under the Court Reform Act. *See* D.C.Code § 11–502.

However, Congress responded to certain problems created by this division of jurisdiction by enacting D.C.Code § 11–502(3) to provide that an indictment jointly charging offenses against both statutory schemes should be subject to a single trial in the U.S. District Court. The present language of D.C.Code § 11–502(3) first appeared in H.R. 16196 (91st Cong., 2d Sess.), and the House Report on that bill stated:

> Some overlapping of jurisdiction will inevitably remain, that being only a minor percentage of cases primarily arising when the same person is accused of infractions which are both Federal and purely local violations (and in those cases the United States Attorney will handle all charges with minimal procedural difficulties).

House Rep. No. 91–907, 91st Cong., 2d Sess., March 13, 1970. The language of the statute places jurisdiction in the District Court whenever a D.C.Code offense is "joined in the same . . . indictment with any federal offense." This is unequivocal language. The statute makes no reference to any other disposition of the joined counts charging D.C. offenses in the event all counts charging federal offenses are dismissed.

The Government concedes that the dismissal of all federal charges prior to trial would require the dismissal of the remainder of the indictment as well. (Gov't Brief at 10). It argues, however, that where the federal counts are dismissed after the trial commences, the District Court may determine the remaining charges. We find the Govern-

ment's arguments on this issue persuasive.

Once the District Court swears in the jury, jeopardy attaches as to all counts in the indictment, both federal and local.[7] If this court were to adopt the position urged by appellant, the District Court would be required to dismiss the local counts whenever the federal counts are dismissed, regardless of the reason for the dismissal. Carried to its logical conclusion, this reasoning would also call for dismissal of local counts where the court directs a verdict of acquittal on the federal counts and perhaps even where the jury returns a verdict of not guilty on the federal counts. Since the double jeopardy clause would prohibit reindictment on the District of Columbia offenses, the defendant would in each instance go free without ever being tried on the local offenses charged in the indictment.[8]

In enacting D.C.Code section 11–502(3), Congress obviously intended that offenders in the District of Columbia should be triable for all relevant offenses committed as part of a crime. It would be unreasonable for this court to hold that Congress authorized a joinder of federal and local offenses for a single trial and at the same time made the disposition of the local charges turn upon the strength of the Government's case in support of the federal counts. The practical effect of such a holding would be to discourage the Government from bringing a joint indictment in certain circumstances. If the offenses involved were independent of one another (e. g. armed

---

7. *See* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Newman v. United States, 133 U.S.App.D.C. 271, 410 F.2d 259, cert. denied, 396 U.S. 868, 90 S.Ct. 132, 24 L.Ed.2d 121 (1969); Crawford v. United States, 109 U.S.App.D.C. 219, 285 F.2d 661 (1960).

8. In the instant case, however, appellant's appeal might constitute a waiver of any double jeopardy claim. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896): [A] defendant, who procures a judgment against him upon an indictment to be set

aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted. Hopt v. Utah, 104 U.S. 631, [26 L.Ed. 873]; 110 U.S. 574, 4 S.Ct. 202, [28 L.Ed. 262]; 114 U.S. 488, 5 S.Ct. 972, [29 L.Ed. 183]; 120 U.S. 430, 7 S.Ct. 614, [30 L.Ed. 708]; Regina v. Drury, 3 Cox Cr.Cas. 544; S.C. 3 Car. & Kirw. 193; Commonwealth v. Gould, 12 Gray, 171. *Id.* at 672, 16 S.Ct. at 1195.

S&L robbery and possessing an unlicensed firearm), the impetus would be to hold a separate trial on each charge. If the offenses were sufficiently related that separate trials would be prohibited due to double jeopardy, the Government would still be encouraged to drop the federal charge and proceed only on the local offense in Superior Court if it felt its case under the local statute was the strongest. In either instance the result would be a frustration of the congressional intent that the District Court was to be the preferred forum whenever federal and local offenses were joinable in the same indictment and that a single trial was to be preferred over two separate trials, one in U.S. District Court and one in the local courts.

The facts in the instant case illustrate the frustration of congressional purpose which would result from adopting appellant's proposal. The federal S&L robbery count was dismissed not because of substantive errors but because the S&L Association and the insuring agency were erroneously identified.[9] Congress could hardly have intended that such errors in one count of a multiple-count indictment would automatically result in the defendant escaping prosecution on all counts.

The instant situation involving the prosecution of D.C.Code offenses in the federal courts is analogous to actions in the federal courts involving claims under both federal and state law. The doctrine of "pendent jurisdiction" permits the U.S. District Courts to exercise jurisdiction over and resolve both state and federal issues. C. Wright, Federal Courts

§§ 9, 19 (2d ed. 1970). Once the federal court has acquired jurisdiction, it may determine all questions arising, irrespective of the disposition of the federal claim. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Chicago G. W. R. Co. v. Kendall, 266 U.S. 94, 45 S.Ct. 55, 69 L.Ed. 183 (1924); Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917). However, in dealing with the pendent claim, the federal courts have drawn a distinction based on the stage of the proceedings at which the federal claim is dismissed.[10] Dismissal of the federal claim prior to the taking of evidence has been held to defeat pendent jurisdiction.[11] On the other hand, where evidence has been received on both claims, it has been held that the trial court retains jurisdiction to determine the pendent state claim even though the federal claim is dismissed.[12]

Of course, the doctrine of pendent jurisdiction has only been applied in civil cases and thus is not directly relevant in the criminal context presently before us, but it does provide us with a model for the resolution of this case. One purpose of the pendent jurisdiction doctrine is to insure the most efficient expenditure of effort by the courts and the parties. See C. Wright, Federal Courts §§ 9, 19 (2d ed. 1970). The retention of jurisdiction over a pendent civil claim where evidence has been received obviously is designed to avoid the duplication of that effort in the state courts. By the same token, the burdens on the judicial system are reduced when an indictment charging offenses arising from a single factual

---

9. It is not necessary at this point for us to determine whether such errors in the indictment require dismissal since the Government voluntarily dismissed the count. *See* Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); Gaither v. United States, 134 U.S.App.D.C. 154, 164–65, 413 F.2d 1061, 1071–72 (1969) (effect of variance between the indictment and the Government's proof at trial).

10. *See generally* Annot., 5 A.L.R.3d 1040, § 9[b] & [c].

11. *See e. g.* McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424 (2d Cir. 1965); T. B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); Robinson v. Stanley Home Products, Inc., 272 F.2d 601 (1st Cir. 1959); Dixon v. Martin, 260 F.2d 809 (5th Cir. 1958).

12. Telechron, Inc. v. Parissi, 197 F.2d 757 (2d Cir. 1952); Strachman v. Palmer, 177 F.2d 427 (1st Cir. 1949).

situation can be tried in a single proceeding rather than in two proceedings in separate courts. Also, if it were possible to retry the local offenses in Superior Court, this would involve a serious duplication of effort where the District Court has already tried the case as part of a joint indictment. The excerpt from the House Report 169 U.S.App.D.C. at page ——, 515 F.2d at page 1329, *supra,* shows that Congress' purpose in enacting D.C.Code § 11–502(3) was to minimize rather than compound the burdens on the courts and the prosecution in those situations where jurisdiction overlapped. Holding only one trial on a joint indictment will also generally minimize the burden on the defendant in presenting his case.

█ The rule advocated by appellant, when considered in light of the double jeopardy clause, would attach severe consequences to the dismissal of all federal counts which this court can not reasonably infer were intended by Congress when it reformed the court system of the District of Columbia. By drawing an analogy to the doctrine of pendent jurisdiction, we produce a construction of D.C.Code § 11–502(3) which is reasonable and which most nearly comports with our perception of the expressed congressional intent. We therefore hold that where federal and local offenses have been properly joined in one indictment and jeopardy has attached, the District Court may proceed to a determination of the local offenses regardless of any intervening disposition of the federal counts.

Since the dismissal of the S&L robbery charge did not deprive the District Court

of its jurisdiction to try the armed robbery and assault counts, we next turn to appellant's argument that the joinder of the particular federal and local charges in the instant indictment was improper.

### III.

Based on the facts of this case, it would have been proper to indict appellant under 18 U.S.C. § 2113(d),[13] the aggravated offense section of the federal S&L robbery statute. The Government instead chose to charge simple S&L robbery under 18 U.S.C. § 2113(a)[14] and the local offenses of armed robbery[15] and assault with a dangerous weapon.[16] This method of charging made available a greater range of penalties since the maximum term of imprisonment for aggravated federal S&L robbery is 25 years, whereas the maximum terms are 20 years for simple S&L robbery, life imprisonment for D.C. armed robbery and 10 years for assault with a dangerous weapon.

█ This case presents a situation which is peculiar to the District of Columbia. Other federal courts would have no occasion to adjudicate violations of state criminal law. In the present case, however, the United States Criminal Code and the District of Columbia Criminal Code were both adopted by Congress. As a result, the double jeopardy clause of the fifth amendment will bar separate prosecutions under the federal and D.C. statutes for the same offense, *i. e.,* where the offenses are identical or where one offense is a lesser included offense of the other.[17] To the

---

13. (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

 18 U.S.C. § 2113(d) (1970).

14. *See* n.1, *supra.*

15. *See* n.2, *supra.*

16. § 22–502. *Assault with intent to commit mayhem or with dangerous weapon.*

 Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than ten years.

 D.C.Code § 22–502 (1973).

17. *See* Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937); Grafton v. United States, 206 U.S. 333, 354–55, 27 S.Ct.

extent that the federal S&L robbery and the local armed robbery charges fall within this "same offense" category, appellant could only be subjected to one trial.

 We have held that it is not a denial of due process for the Government to choose to prosecute under a federal statute which imposes greater penalties than an identical D.C. statute.

> [Appellant's] point is that the offenses denounced by the federal and local statutes are identical and that he was entitled to be prosecuted under the latter because the penalty for violating it is less severe than that provided by the federal statute. The theory is untenable. A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution. That choice is to be made by the United States Attorney.

Hutcherson v. United States, 120 U.S. App.D.C. 274, 277, 345 F.2d 964, 967 (1965). The reasoning applies with equal force to the present situation where the local statute provides greater penalties than the federal statute.[18] Appellant thus cannot contest the Government's right to elect to prosecute him under either statute, but he argues that it may not prosecute him under both statutory schemes at the same time.

749, 51 L.Ed. 1084 (1907); United States v. Knight, 166 U.S.App.D.C. 21, 27, 28, 509 F.2d 354, 360–61 (1974); United States v. Canty, 152 U.S.App.D.C. 103, 117–18 n.20, 469 F.2d 114, 128–29 n.20 (1972). Cf. Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (state and its municipalities held to be a single sovereign).

18. See also United States v. Greene, 160 U.S. App.D.C. 21, 27, 489 F.2d 1145, 1151 (1973):
Whether prosecution is brought in this jurisdiction under the D.C.Code or whether it is brought under an applicable section of the United States Code is a matter confided solely to the discretion of the United States Attorney.

19. And see United States v. McDonald, 156 U.S.App.D.C. 338, 348, 481 F.2d 513, 523 (1973) (Bazelon, C. J., concurring and dissenting):

 The federal and D.C. Criminal Codes "were intended to exist together" and "were intended to mesh with each other." United States v. Greene, 160 U.S.App.D.C. 21, 26, 489 F.2d 1145, 1150 (1973). In exercising its power over the District of Columbia, Congress can enact laws which are substantially identical to national legislation but which provide different penalties for their violation. See O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1933); United States v. McDonald, 156 U.S.App.D.C. 338, 343, 481 F.2d 513, 518 (1973).[19] If we were to hold, in situations such as the present case where double jeopardy constraints prevent separate trials, that a single prosecution under statutes from both schemes was impossible as a general principle, we would as a practical matter be nullifying one statute whenever an enactment dealing with a local offense is at variance with its federal counterpart. See id. This is hardly the co-existence and meshing together of the two codes which this court has interpreted as being the congressional intent. Furthermore, the Government is permitted to charge lesser included or alternate offenses in order to allow for contingencies in proof. Sutton v. United States, 140 U.S.App.D.C. 188, 199, 434 F.2d 462, 473 (1970), cert. denied, 402 U.S. 988, 91 S.Ct. 1676, 29 L.Ed.2d 153 (1971).

> I do not doubt that in exercising its power over the District of Columbia Congress may enact a separate body of legislation and apply it only within that jurisdiction. Indeed, in enacting a separate body of law for the District Congress apparently also has the power to enact laws substantially identical to its national legislation, to provide differing penalties for their violation despite that identity, and to require that both sets of laws be enforced in the District of Columbia.

(Footnotes omitted); United States v. Greene, 160 U.S.App.D.C. 21, 27, 489 F.2d 1145, 1151 (1973), quoting Johnson v. United States, 225 U.S. 405, 417, 32 S.Ct. 748, 752, 56 L.Ed. 1142 (1912):

> There is certainly nothing anomalous in punishing the crime of murder differently in different jurisdictions. It is but the application of legislation to conditions.

On the basis of the above authorities, we conclude that the Government is not as a general principle prevented from simultaneously charging in one indictment offenses under similar federal and D.C. statutes arising out of a single transaction.

We must next determine whether the particular statutes involved preclude such prosecution in this case. Appellant argues that the Government is not permitted to simultaneously prosecute offenses under both the federal S&L robbery statute and the local armed robbery statute where the federal statute creates a comprehensive scheme for punishing the total offense. After studying these statutes, we conclude that the federal statute does not preclude a prosecution under local law for the robbery of an institution falling within the jurisdiction of the federal statute.

Whether the passage of a specific law precludes prosecution under a more general law covering the same offense is a question of legislative intent. The original federal bank robbery statute, Pub.L. 73–235, 73d Cong., 2d Sess. (May 18, 1934), 48 Stat. 783, provided:

> Sec. 4. Jurisdiction over any offense defined by this Act shall not be reserved exclusively to courts of the United States.[20]

This section was expressly repealed in 1948 (62 Stat. 866) and replaced by 18 U.S.C. § 3231 which provides:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
>
> Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

18 U.S.C. § 3231 (1970), 62 Stat. 826. Congress considered that section 4 of the bank robbery statute was adequately covered by the new section. House Rep. No. 80–304, 80th Cong., 2d Sess. Thus Congress has apparently never altered its original intent that the federal jurisdiction over offenses arising from robberies of banks and other federally insured institutions under section 2113 should not be exclusive. What is provided is that those offenses created by federal statutes must be exclusively prosecuted in federal courts.

In Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), the Court noted that section 3231, *supra*, was not intended by itself to resolve issues of whether a federal statute superseded state prosecution of the same offense. *Id.* at 501, n.10, 76 S.Ct. 477. It held that where Congress is silent on the question, a federal statute would be found to be exclusive if the scheme of federal regulation is so pervasive that Congress left no room for the states to supplement it, if the statute deals with a subject in which the federal interest is dominant, or if enforcement of the state statute would interfere with administration of the federal program. However, the Court cautioned that its decision did not "prevent the State from prosecuting where the same act constitutes both a federal offense and a state offense under the police power." *Id.* at 500, 76 S.Ct. at 479. Armed robbery certainly falls within the state police power, and this is doubly certain where many of the institutions are state banks and associations and federal jurisdiction rests solely on the presence of federal insurance.

**20.** *See* House Rep. No. 73–1461, 73d Cong., 2d Sess., May 3, 1934, at 2:

> The Attorney General has made the following statement to the Committee on the Judiciary with reference to this proposed legislation:
>
> The bill specifically provides that jurisdiction shall not be reserved exclusively to United States courts. There is no intention that the Federal Government shall supersede the State authorities in this class of cases. It will intervene only to cooperate with local forces when it is evident that the latter cannot cope with the criminals.

In the District of Columbia, the robbery provisions of the D.C.Code bear the same relationship to the federal bank robbery statute as do the robbery statutes of the various states. The double jeopardy clause prohibits successive prosecutions in D.C. for violations of federal and D.C. law arising from the same bank (S&L) robbery, see *supra*, 169 U.S.App.D.C. p. ——, 515 F.2d pp. 1331–1332, but it does not require that prosecution under the federal scheme is to be preferred to prosecution under local statutes, so long as only a single prosecution takes place. In the absence of any contrary expression of congressional intent, it cannot be implied that Congress chose to allow dual prosecutions of bank (S&L) robberies throughout the rest of the United States but prohibited the Government from ever electing to prosecute under local rather than federal law when the bank (S&L) is located in the District of Columbia.

In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the Supreme Court held it was error to impose separate punishments for robbery of a bank and for entry of a bank with intent to rob (separate paragraphs of section 2113(a)). The Court concluded that in the establishment of the lesser offense of entry with an unlawful purpose, Congress intended merely to provide for a lesser offense when the accused had been unsuccessful in completing his intended crime of robbery, and "there was no indication that Congress intended also to pyramid the penalties." *Id.* at 327, 77 S.Ct. [403] at 406. On the same reasoning, *Prince* has been interpreted as also prohibiting convictions and sentences for both simple and aggravated bank robbery under the federal statute.[21]

In United States v. Canty, 152 U.S. App.D.C. 103, 469 F.2d 114 (1972), we held that *Prince* prohibited simultaneous convictions and sentences for bank robbery (18 U.S.C. § 2113(a)) and assault with a dangerous weapon (D.C.Code § 22–502).[22] The court recognized that *Prince* was not directly controlling since the defendant "was not sentenced under two counts of the federal bank robbery statute." 152 U.S.App.D.C. at 117, 469 F.2d at 128. However, it noted that the local assault charge was essentially a substitute for a charge under the aggravated offense section of the bank robbery statute.

> [I]t does not follow from the existence of a parallel provision on bank robbery with the aid of a dangerous weapon [§ 2113(d)] that Congress intended to permit punishment for assault with a dangerous weapon under the District of Columbia Code on top of punishment for robbery of a bank by force and violence under the federal bank robbery statute [§ 2113(a)].

*Id.* at 116, 469 F.2d at 127. The court observed:

> The federal bank robbery statute establishes a comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks.

> . . . . .

> By venturing outside the federal scheme, the prosecution was able to circumvent the scheme's carefully crafted hierarchy of penalties.

*Id.* at 116–117, 469 F.2d at 127–128. Although the defendant was convicted under two distinct statutes rather than twice under the same statutory scheme,

> the effect of charging one count under the bank robbery scheme and another outside the scheme was effectively the same, that is to say, it permitted the Government to obtain a sentence longer than .the maximum authorized un-

---

**21.** *See e. g.* Holland v. United States, 384 F.2d 370 (5th Cir. 1967); Bayless v. United States, 347 F.2d 354 (9th Cir. 1965).

**22.** The instant indictment was returned six days after this court's decision in *Canty* (Gov't Brief at 9, n.8).

der the highest tier of the bank robbery scheme.

*Id.* at 117, 469 F.2d at 128.[23]

Since assault with a dangerous weapon is a lesser included offense of armed robbery, the above reasoning should apply with equal force to the present case. Thus *Canty* clearly prohibited sentencing appellant on both the federal S&L robbery and the D.C. armed robbery counts of the indictment.[24]

Unlike the situation in *Canty,* however, the appellant in the present case was ultimately sentenced under only one statutory scheme. Thus it is necessary for appellant to argue that *Canty* prohibits not only multiple convictions but also simultaneous prosecution under both statutes. The language used in *Canty* lends some support to this argument. The court stated that the defendant "was prejudiced by an impermissible joinder of charges," *id.* at 116, 469 F.2d at 127, and that "it was error to join" the two charges, *id.* at 118, 469 F.2d at 129. However, the court remedied this error by vacating the assault convictions and affirming the federal bank robbery convictions rather than by ordering a new trial under an indictment which did not prejudicially join charges. Thus it is apparent that despite the court's language, the error lay in sentencing under both statutes for essentially the same offense rather than in prosecuting offenses under both statutes.

■ In the present case appellant was sentenced only under the local armed robbery statute. His sentence was well within the maximum punishment allowed by that statute. The requirements of *Canty* were of no further relevance once the federal count of the indictment was dismissed.[25]

In reaction to an argument somewhat similar to the one urged by appellant in this case, we stated:

> To adopt appellant's construction would lead to an anomalous result, one that Congress could not conceivably have intended. If one killed during the course of a robbery on the street in front of a bank, he could be prosecuted for felony murder under the D.C.Code, but if during the course of a robbery in a bank a killing occurred, that robber could not be prosecuted for felony murder under the D.C.Code. Such a construction must be rejected.

United States v. Greene, 160 U.S.App. D.C. 21, 27, 489 F.2d 1145, 1151 (1973). That reasoning applies in the present case as well. It would be equally anomalous to hold that if someone committed an armed robbery in the District of Columbia of any type of establishment other than a bank or S&L, he would be subject to the maximum sentence of life imprisonment under the local statute whereas if that person confined himself to the armed robbery of federally-insured banks or savings and loan associations located in D.C., he could be punished only under the less harsh federal statute.

23. The same result should follow although the *actual* sentence imposed in a particular case is less than the maximum allowed by the federal statute.

24. *See* United States v. Joyner, 160 U.S.App. D.C. 389, 492 F.2d 655 (1974), where this court vacated an armed robbery conviction entered simultaneously with a conviction for bank robbery. The government had conceded in *Joyner* that *Canty* barred the dual conviction.

We have also held with respect to mail robbery that the intent of Congress may prohibit conviction for assault with intent to rob (attempt) under the Mail Robbery statute, 18 U.S.C. § 2114 (1970), when the accused is also convicted of committing the same crime he is charged with attempting in violation of the D.C. robbery statute. United States v. Spears, 145 U.S.App.D.C. 284, 288–293, 449 F.2d 946, 950–955 (1971).

25. Our holding eliminates any argument that prosecution under both statutes is a denial of equal protection. A defendant is subject to only a single trial in this district and there are no possible adverse consequences due to being found guilty under both federal and D.C. law since he can ultimately be sentenced under only one statutory scheme. *See also* Sims v. Rives, 66 App.D.C. 24, 84 F.2d 871 (1936).

■ We therefore conclude that the Government may properly charge in the same indictment offenses against both the federal bank (S&L) robbery and the local armed robbery statutes, provided that the defendant is not ultimately sentenced under two statutes proscribing essentially the same offense.[26] We recognize that this holding may encourage the conviction and sentencing of bank robbers under D.C. rather than federal law. Since Congress has chosen to enact two statutes covering the same conduct, however, it is for the U.S. Attorney to determine whether to prosecute under both statutes or only one, for the trial court to select the counts on which to impose sentence when the jury returns verdicts of guilty under both statutes, and for Congress to change the law if it is to be changed. In the absence of an express statement of congressional intent, the courts are obliged to enforce both statutes to the greatest extent possible, consistent with constitutional constraints.

## IV.

■ We find the remainder of appellant's arguments to be without merit. After listening to the testimony, the trial court explicitly found that appellant gave his confession knowingly and voluntarily (M.Tr. 145–146, Tr. 258) and that the officer preparing the affidavit in support of the arrest warrant was not guilty of false swearing, overzealousness,

or bad faith (M.Tr. 133–135). We find nothing to indicate that these conclusions were erroneous. Assuming *arguendo* that appellant's arguments concerning the "incompleteness" of the affidavit are properly before this court, they do not justify a reversal. Even if the affidavit had contained the "facts" which were allegedly omitted, the magistrate would have had adequate grounds for concluding that probable cause existed to issue an arrest warrant for appellant. Finally, the omission of an instruction that voluntary narcosis could negate specific intent to commit the robbery was not plain error. Appellant's counsel never requested such an instruction, he had previously admitted, under the compulsion of the officer's testimony, that appellant's actions indicated he was not under the influence of narcotics when he confessed (see 169 U.S.App.D.C. p. ——, 515 F.2d p. 1328, *supra*), and he indicated his satisfaction with the instructions as given (Tr. 252). Nor was the evidence on this issue sufficient to require the court to give an instruction on voluntary narcosis in the absence of such a request by the defense.

For the above reasons, appellant's conviction and sentence for armed robbery under the D.C. statute is affirmed.

Judgment accordingly.

BAZELON, Chief Judge (concurring):

I concur in the result reached by the court. I am concerned, however, with

---

**26.** *See also* United States v. Knight, 166 U.S. App.D.C. 21, 509 F.2d 354 (1974), involving simultaneous convictions for federal mail robbery, 18 U.S.C. § 2114 (1970) and local armed robbery, 22 D.C.Code §§ 2901 and 3202, where the court stated:

> What is impermissible is not the joinder of offense for trial . . . but the joinder of judgments even with concurrent sentences. 509 F.2d at 363. In United States v. Caldwell, D.C.Cir. (Dec. 31, 1974), the court stated:
>> Appellants also contend that the Federal Bank Robbery Act, codified in 18 U.S.C. § 2113 (1970), under which appellants jointly incurred three convictions . . . supersedes the general provisions of the District of Columbia Code and thus, they assert, bars

prosecution under the latter for a felony-murder occurring in a federally-insured financial institution. We reject this position. In regard to the effect of passage of the Bank Robbery Act, the argument is contrary to general principles of prosecutorial discretion, Hutcherson v. United States, 120 U.S. App.D.C. 274, 277, 345 F.2d 964, 967, cert. denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965), and the legislative history of the Act does not indicate a congressional intent to limit that discretion in this manner. See H.R.Rep. No. 1461, 73rd Cong. 2d Sess. 2 (1934). See also United States v. Greene, . . . 160 U.S.App.D.C. at 27, 489 F.2d at 1151.

Slip Op. at 65, n. 176.

the reasoning of Part III of its opinion relating to petitioner's contention that the *local* counts (of which he was convicted) and the *federal* bank robbery count, which was dismissed prior to submission to the jury, were not properly joined in a single indictment under *Canty v. United States*.[1] On that premise, petitioner urged us to conclude that the district court had no jurisdiction under D.C.Code § 11–502 to try him on the local charges.

In *Canty,* the defendant was convicted, *inter alia,* of bank robbery under the United States Code[2] and assault with a deadly weapon under the D.C.Code.[3] Both charges stemmed from his having robbed a bank with a gun. He was sentenced to consecutive terms of 6 to 18 years on the bank robbery count and 3 to 9 years on the local count, making a combined sentence of from 9 to 27 years. If the defendant had been charged and convicted of the federal bank robbery count alone, he would have been subject to a maximum term of 25 years.[4] This court vacated the conviction and sentence on the assault count, holding that the Government was prohibited from venturing outside the scheme established by the Federal Bank Robbery Act in order "to circumvent [that] scheme's carefully crafted hierarchy of penalties."[5]

The immediate concern of the court in *Canty* was to limit punishment for crimes cognizable under the federal act. But as the majority opinion points out, there is language in *Canty* to suggest that charges under the federal act and the local code covering the same conduct may not be joined.[6] Indeed, *Canty's* characterization of the federal act as "a comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks"[7] supports a broad inference that Congress did not intend the local code to apply at all to offenses dealt with in that act. Such a reading would not only prevent joinder of federal and local counts in federal district court, it would also rule out prosecution in D.C. court of local code offenses relating to bank robberies.

A construction of the Federal Bank Robbery Act as superseding catchall provisions of the D.C.Code is not prevented by any express statement of Congress to the contrary. The majority's rejection of it, despite the broader implications of *Canty,* appears to have two major bases. The first of these is a review of the Federal Bank Robbery Act's legislative history and relevant case law[8] which concludes that federal jurisdiction over offenses dealt with in the Act does not preclude state prosecution of the same offenses. The short answer to this approach is that the District of Columbia is not a state. As will become evident from subsequent discussion, there are grounds on which to distinguish between questions of a statute's exclusivity as to the states and its exclusivity as to D.C.[9] A second basis for the majority's construction is the anomaly that would exist under a reading favorable to petitioners:

> if someone committed an armed robbery in the District of Columbia of any type of establishment other than a bank or S&L, he would be subject to the maximum sentence of life imprisonment under the local statute, whereas if that person confined himself to the armed robbery of federally-insured banks or savings and loan associations located in D.C., he could be punished only under the less harsh federal statute.[10]

---

**1.** 152 U.S.App.D.C. 103, 469 F.2d 114 (1972).

**2.** 18 U.S.C. § 2113(a).

**3.** D.C.Code § 22–502.

**4.** 18 U.S.C. § 2113(d).

**5.** 469 F.2d at 128.

**6.** Draft Opinion at 19. *See* United States v. Canty, *supra* note 1, at 127, 129.

**7.** 469 F.2d at 127.

**8.** 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). *See* Majority Opinion 169 U.S.App. D.C. at ———— , 515 F.2d at 1333–1334.

**9.** *See* note 21 & text accompanying notes 11–21 *infra.*

**10.** Draft Opinion at 20.

The opinion reasons that as Congress cannot reasonably have intended such a result, the Federal Bank Robbery Act and the D.C.Code must be read as "meshing together." The prosecutor in D.C. retains discretion to prosecute bank robberies under either federal or local law, or under both at the same time, as he chose to do in this case.

But nowhere does the majority opinion acknowledge the anomaly that is created by its reading of the statutes as "meshing together." Dual applicability of the statutes will mean that a bank robber in D.C. will be subject to a maximum sentence of life imprisonment, whereas in any other jurisdiction maximum punishment under congressional enactment would be only twenty-five years. In adopting the majority's reading we are saying in effect that Congress intended to subject D.C. bank robbers to greater potential punishment than bank robbers anywhere else in the country. In my view, a court might reasonably refuse to reach such a conclusion in the absence of an express statement of legislative intent to the contrary, reversing the presumption indulged in by the majority opinion.

In suggesting this, I do not pretend that the inequity cited by the court, and relied on in its construction of the statute, does not exist, or even that it is insignificant. But it is at least neutral as to the political status of those affected. The inequity *created* by the court's reading is not. As we said in United States v. Thompson,

> What is involved here is not just any arbitrary classification between two similarly situated groups. The residents of Washington occupy a profoundly anomalous position in the federal system, [because they do not send a voting representative to Congress,] and any classification which discrimi-

nates against them is particularly suspect.[11]

We concluded that "it is not enough for [discriminatory] classifications [affecting D.C. residents] to be merely rational or even plausible; the justification offered must be convincing."[12] These principles informed our approach to the question of whether the bail provisions of the D.C. Court Reform Act applied to those convicted in D.C. of violating federal criminal laws. Finding no adequate justification for subjecting the bail release applications of D.C. offenders to standards different from those applicable elsewhere in the federal court system, we based our construction of the statute on a presumption that the Government's reading was erroneous.

There exists a possible ground for distinguishing *Thompson*. There we dealt with discrimination against those in D.C. convicted of federal crimes; in this case we are concerned with discrimination against those convicted of violating laws exclusively local in application. This distinction forms the basis for an argument that the equal protection concerns stressed in *Thompson* simply are not relevant here.

In addition to its responsibilities as the national law maker, Congress is empowered by the Constitution "[t]o exercise exclusive Legislation in all Cases whatsoever" in the District of Columbia.[13] As the Supreme Court declared recently in Palmore v. United States,

> The power is plenary. Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes.[14]

---

11. 147 U.S.App.D.C. 1, 452 F.2d 1333, 1340 (1971).

12. *Id.* at 1341.

13. U.S.Const., art. I, § 8, cl. 17.

14. 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973).

This unique aspect of Congress' power was relied on in rejecting the equal protection arguments of petitioners in United States v. McDonald,[15] which upheld a provision of the federal Youth Offenders Act denying coverage to those convicted to violating provisions of the D.C.Code. It was also at the core of the court's analysis in United States v. Greene,[16] which upheld the local felony murder statute's inclusion of U.S.Code offenses.

The principle enunciated in *Palmore* supports the proposition which I stated in an opinion concurring and dissenting in *McDonald*, in a passage quoted with approval by the majority opinion in this case:

> in enacting a separate body of law for the District Congress apparently also has the power to enact laws substantially identical to its national legislation, to provide differing penalties for their violation despite that identity, and to require that both sets of laws be enforced in the District of Columbia.[17]

But this does not mean that in exercising its dual functions Congress is exempt from the guarantee of equal protection implicit in the due process clause of the Fifth Amendment.[18] Skirting *Thompson* requires a further conceptual step, which amounts to considering "Congress as two distinct legislative bodies, one exercising the police power of a sovereign state over the District of Columbia, and the other the limited power of the federal government." [19] This legal fiction, I argued in *McDonald*, is not required by necessity.[20] And it moves us further in a direction contrary to basic principles of democratic government, presenting the stark apparition of a "local" legislature which does not contain a single voting member elected by the people of the locality. So long as the residents of D.C. are denied a vote in congressional elections, it would seem incumbent on the courts to enforce the minimal controls on legislative activity stemming from the Constitution to their fullest extent, rather than to fabricate devices which render those controls inoperative.[21]

I press this analysis with considerable diffidence at this point.[22] It has been rejected, by implication at least, in *McDonald, Greene,* and more recently in United States v. Caldwell,[23] which plainly held, albeit in a footnote, that the Federal Bank Robbery Act does not bar prosecution of bank robbery and related offenses under the D.C.Code. Perhaps there are reasons which have yet to be put forward, or which I have yet to properly appreciate, that do make *Thompson* irrelevant here. And even if *Thompson* is relevant, there may be justification for the discriminatory classifications in cases such as this that did not

---

**15.** 156 U.S.App.D.C. 338, 481 F.2d 513 (1973).

**16.** 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973).

**17.** 481 F.2d at 523.

**18.** *See generally* Washington v. Legrant, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968) (consolidated with and reported sub nom. Shapiro v. Thompson); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**19.** United States v. McDonald, *supra* note 15, at 523 (Bazelon, C. J., concurring in part and dissenting in part).

**20.** *Id.* at 524.

**21.** This analysis should make clear the basis of my view that a holding for petitioners would be consistent with decisions that the Federal Bank Robbery Act is not exclusive as to the states. *See* text accompanying note 9 *supra.*

**22.** I have expressed substantially the same position previously in United States v. Greene, *supra* note 16, at 1159 (Statement of Bazelon, C. J., as to why he would grant rehearing en banc), and United States v. McDonald, *supra* note 15, at 518 (Bazelon, C. J., concurring in part and dissenting in part). And in an opinion for the majority in United States v. Brown, 157 U.S.App.D.C. 311, 483 F.2d 1314 (1973), I found that *Thompson*-based considerations "might also apply" to the issue before us in that case: whether D.C.Code bail provisions should be read to apply to local offenders in federal court. The Government's reading was rejected on a rationale which did not depend on the *Thompson* presumption, although constitutional concerns formed the background against which the issue was decided.

**23.** No. 72–1513 (D.C.Cir. Dec. 31, 1974), slip op. at 65 n. 176.

exist in *Thompson.* But after careful review of the reasoning of the majority opinion, and the opinions on which it relies, petitioner's contentions continue to present for me questions of serious import which have not been satisfactorily answered.

Estopped by prior decisions, in particular the holding in *Caldwell,* from carrying *Canty* to what I believe is its logical conclusion, I am left to dispute the majority's reading of that decision on a more limited basis. The majority opinion states, and correctly so, that *Canty* prohibits multiple convictions for armed robbery and bank robbery resulting from the same activity. But the opinion goes on to state that the "requirements of Canty were of no further relevance once the federal count of the indictment was dismissed."[24] This leaves open the possibility that Shepard could have been sentenced to a term of life in prison under the D.C.Code (as against a maximum of twenty-five years under the federal act), so long as he was not convicted of the federal charge for which he was indicted.

Leaving open this possibility is inconsistent with *Canty*'s broad charge that the prosecutor not be allowed to "circumvent the [federal] scheme's carefully crafted hierarchy of penalties."[25] *Caldwell* requires us to recognize two broad

options on the part of the prosecutor. He may invoke the federal act in district court, with or without joinder of counts under the local code, or he may ignore the federal statute entirely and proceed under the local code in D.C. Superior Court. If he chooses the latter alternative, the defendant is vulnerable to the full penalty provided for by the local code. Once the prosecutor chooses the former course, however, it seems to me that the circumvention of the federal scheme becomes a relevant concern, regardless of whether the prosecutor ultimately attains multiple convictions, as he did in *Canty.* The central thrust of *Canty* is that the pyramiding of penalties in excess of the ceiling under the federal act must be avoided. The multiple convictions involved in *Canty* are simply one device by which the Government might achieve this impermissible goal. Joinder of charges with dismissal prior to judgment is another. *Canty* is properly read to prevent the use of either toward that end.[26]

My difference with the majority does not affect the result. Shepard was sentenced under the local armed robbery statute to a term of 4 to 20 years. Since this is less than the term he could have received under the Federal Bank Robbery Act, in this particular case *Canty,* as I understand it, was not violated.

24. Draft Opinion at 19.

25. 469 F.2d at 128.

26. This position is not in conflict with our recent holding in United States v. Knight, 166 U.S.App.D.C. 21, 509 F.2d 354 (1974). Appellants in that case were convicted and sentenced under both the federal mail robbery statute and the local armed robbery provision. Each was sentenced to from three to ten years under the federal code; one was sentenced to from 4 to 12 years under the local code and the other to from 10 to 30 years—all sentences to run concurrently. Maximum sentence under the mail robbery statute was ten years. The court found that *Canty* prevented the dual convictions, but at the same time it held that on remand the district court had discretion to sentence either under the federal statute or under the local code—without restrictions keyed to the 10-year ceiling under the federal scheme. This holding turned on a determina-

tion of congressional intent with regard to the particular provisions involved and therefore does not govern the instant case; indeed the court itself in *Knight* suggested a possible basis for distinguishing the cases in acknowledging that '[i]n the case of the mail robbery statute, 18 U.S.C. § 2114, the scheme is not as comprehensive as that of the federal bank robbery statute." 509 F.2d at 362. To the degree that the court in *Knight* considered the mail robbery statute comparable in all relevant respects to the Bank Robbery Act, its result is simply inconsistent with the disposition in *Canty.* For the *Canty* court, in remanding to the district court, vacated the local assault count and allowed sentencing only under the Bank Robbery Act and the local count of carrying a dangerous weapon, which was specifically found to lie outside the coverage of the federal scheme. This action was an implicit denial of the discretion recognized in *Knight.*