911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie Bishop JONES, Defendant-Appellant.
 No. 89-5595.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1990.
Decided Aug. 6, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-82-52-R)
 Roger Lee Gregory, Wilder, Gregory & Martin, Richmond, Va., for appellant.
 N. George Metcalf, Assistant United States Attorney, Richmond, Va., for appellee; Henry E. Hudson, United States Attorney, Richmond, Virginia, on brief.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Eddie Bishop Jones was tried by a jury on sixteen counts of illegally dealing in firearms in violation of several provisions of 18 U.S.C. Sec. 922. The jury found Jones guilty of all counts, and he was sentenced by the district court. On this appeal he principally contends that there was not sufficient evidence to prove his nonresidency in Virginia as a predicate for violating Sec. 922(a)(6), and that there was insufficient evidence to prove that he aided and abetted his associates in illegally purchasing the firearms. He also contends that since he had been arrested and convicted earlier in a different court of a misdemeanor offense involving the same incidents as alleged in count sixteen of the indictment involved here, his fifth amendment right to be free from double jeopardy has been violated. He further argues that the district court erred in ruling on certain closing remarks by the prosecutor, in giving certain instructions, and in making certain evidentiary rulings. We affirm.
 
 
 2
 * Title 18 U.S.C. Sec. 922(a)(6) provides in pertinent part:
 
 
 3
 [It shall be unlawful] for any person in connection with the acquisition ... of any firearm ... from a ... licensed dealer ... knowingly to make any false or fictitious oral or written statement ... intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale....
 
 
 4
 The government alleges Jones had violated this section by falsely representing he was a resident of Virginia when purchasing guns in Virginia. See 18 U.S.C. Sec. 922(a)(5). Jones contends there was insufficient evidence to prove he was not a resident of Virginia, and that the jury was erroneously instructed concerning the meaning of "resident."
 
 
 5
 In considering an attack on the sufficiency of the evidence after a jury verdict of guilty, we of course view the evidence and all reasonable inferences derived from it in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir.), cert. denied, 447 U.S. 925 (1980). We summarize the evidence with this view.
 
 
 6
 Jones was raised in Lawrenceville, Virginia. In the 1970s, he moved to New York City. His parents remained in Lawrenceville, and from time to time he would return to Lawrenceville for visits. On March 16, 1987, Jones obtained a Virginia driver's license. Between March 16 and May 30, 1987, when he was arrested, Jones on numerous occasions purchased handguns and other firearms from dealers in Virginia.[1] Each time, he presented his Virginia driver's license and filled out a form certifying that he was a resident of Virginia.
 
 
 7
 The evidence relating to Jones' residence showed that Jones and his girlfriend had rented a room on 147th Street in New York City and resided there from April 1986 until March 29, 1987, when he was evicted through judicial action. The landlord who had evicted him continued to see Jones in New York after March 29. Papers seized from Jones at the time of his arrest (when he was on a bus bound for the District of Columbia and New York City) included a Harlem hospital card showing appointments in February, March, and April of 1987, a New York optician's bill showing a pickup date of May 18, 1987, a New York automobile repair bill dated May 14, 1987, and an airline ticket indicating that Jones had flown from New York to Richmond earlier that same day. Associates who purchased guns in Virginia for Jones testified that, after each such purchase, they would take Jones to the bus and he would return to New York with the guns.
 
 
 8
 In light of this evidence, we have no doubt that any rational juror could have found Jones was a resident of New York when he purchased the firearms in Virginia, and, contrary to Jones' assertion, we find no error in the trial court's instruction concerning what the jury could consider in determining residency in the discrete circumstances of this case.
 
 II
 
 9
 Jones next complains that he was erroneously convicted of the charges of aiding and abetting. In this context he argues first that Jarrett and Layton, who purchased firearms and gave them to him, were not guilty of any crime--therefore, Jones could not have been guilty of aiding and abetting them in the commission of a crime. Second, he argues that the government failed to prove that he associated with a criminal venture or participated in it. There is no merit to either of these arguments.
 
 
 10
 In Jones' view, since both Jarrett and Layton gave their correct names and addresses to the firearms vendors in making the "straw purchases" on behalf of Jones, they could not have violated 18 U.S.C. Sec. 922(a)(6). The record is replete, however, with evidence that the two associates purchased the guns and gave them to Jones knowing that he was using them as purchasers because he was apprehensive of purchasing any more weapons in his own name. The transactions obviously were direct purchases for Jones, and only by blind adherence to a strained logic could we conclude other than that false information was provided to facilitate the transactions. Jones' contention that neither he nor his associates had criminal intent is equally meager.
 
 III
 
 11
 At one point during Jones' trial, the prosecutor elicited evidence regarding the value of the firearms Jones had purchased. His attorney objected on the grounds such evidence was irrelevant and inflammatory; the court overruled. During closing argument, the prosecutor stated or inferred several times that Jones was running guns to New York. Jones' attorney objected, contending that Jones had not been charged with transporting arms to New York and that the prosecutor's remarks were inflammatory. After the jury returned a guilty verdict, Jones moved for judgment of acquittal, raising, among other issues, the admission of evidence on the cost of the guns, and the prosecutor's characterization of Jones as a gun runner. The district court denied the motion. Jones asserts that the district court erred in these rulings and denied Jones a fair trial.
 
 
 12
 Among other things, the court instructed the jury that closing arguments are not evidence and that the jury is the judge of the weight to be given evidence. In any event, the jury, in our view, could have properly considered the relevance, if any, of Jones' actions to his claim to a Virginia residence. Given the instructions and the weight of evidence against Jones, we do not find that he was denied a fair trial. Cf. United States v. Moore, 710 F.2d 157, 159-60 (4th Cir.), cert. denied, 464 U.S. 862 (1983).
 
 IV
 
 13
 Jones was apprehended in Washington, D.C., on May 30, 1987, because he had aroused the suspicions of a security guard at the bus station. The guard called the District of Columbia police, who arrested Jones and searched the buses Jones had been seen entering and leaving. A nylon bag was discovered which contained three firearms and ammunition, plus documents of identification belonging to Jones (e.g., his birth certificate and social security card). Jones was convicted in a District of Columbia court on charges of illegal possession of weapons and ammunition, and he was incarcerated for several months there. Later, Jones was indicted by the federal government for the charges which have led to this appeal.
 
 
 14
 Count sixteen of the federal indictment charged that Jones had transported firearms on a common carrier without giving written notice to the carrier, in violation of 18 U.S.C. Sec. 922(e). Jones contends that his right to be free from double jeopardy was violated by his conviction of this count since it arose out of the same facts as those under which he was tried and convicted in the District of Columbia.[2] However, as Jones candidly admits, the Sec. 922(e) offense required proof of elements which are not part of the District of Columbia offense--whether the firearms were transported on a common carrier and whether written notice was given to the common carrier. It is also clear that the government in the Sec. 922(e) prosecution proved different conduct than that grounding the District of Columbia illegal possession conviction. The double jeopardy prohibition, therefore, does not apply. Grady v. Corbin, 110 S.Ct. 2084, 2087 (1990); Blockburger v. United States, 284 U.S. 299, 304 (1932).
 
 
 15
 In view of the above, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 In toto, Jones purchased twenty-eight handguns, four shotguns, and one rifle on eleven separate occasions
 
 
 [2]
 Since the District of Columbia is a federal entity, "the double jeopardy clause of the fifth amendment [bars] separate prosecutions under federal and D.C. statutes for the same offense." United States v. Shepard, 515 F.2d 1324, 1331 (D.C.Cir.1975)