**UNITED STATES of America**

v.

**Joseph A. JOHNSON, Jr. also known as "Joe Boss," Appellant.**

**No. 77–1661.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 27, 1978.

Decided Dec. 11, 1978.

Michael Alan Olshonsky, Bethesda, Md., for appellant.

John R. Fisher, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Roger M. Adel-

man, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM and ROBINSON, Circuit Judges, and GESELL,* United States District Judge for the District of Columbia.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was tried before a jury, convicted and sentenced on a count of armed bank robbery, a federal offense,[1] and as well on a count of armed robbery, a District of Columbia offense.[2] He now contends that the District Court erred in refusing to grant his motion for a judgment of acquittal, arguing specifically that inculpatory admissions made by him were too sparsely corroborated to support a conviction and, more generally, that the evidence was legally insufficient to convict him. We find these claims belied by the record and consequently we uphold the District Court's refusal to order an acquittal.[3] Since, however, the court impermissibly imposed dual sentences for what in legal contemplation was a single offense, we remand the case with instructions to vacate the judgment on one of the counts.[4]

## I. BACKGROUND

The Harry Diamond Laboratory Federal Credit Union was robbed on the morning of March 10, 1976, a payday for its employees. According to the testimony of Marian Gilbert, a teller, a man entered the office of the credit union and, after a customer departed, displayed a gun and demanded money. While Ms. Gilbert was complying, a second armed man came in and demanded cash from a second drawer.[5] There was evidence that a black Eldorado Cadillac was parked nearby, with the engine running, about the time of the holdup,[6] and that the bandits seemed familiar with the operation of the credit union.[7]

Months later, appellant, who had once worked for the credit union, was charged as a participant in the robbery. At trial, the Government introduced a composite drawing of the robber who entered second, prepared with the assistance of Ms. Gilbert.[8] It also introduced the grand jury testimony of Arthur Jackson[9] that, at a gathering at appellant's house, appellant had recounted details of the holdup and indicated his participation.[10] According to Jackson, appellant's recitation mentioned that one gunman came in five minutes late[11] and that the driver of the getaway car was named

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. 18 U.S.C. § 2113(a), (d) (1976).

2. D.C.Code §§ 22–2901, 22–3202 (1973). Indicted with appellant on both counts were Marion D. Bumbrey, Nathan B. Bowman and James T. McCloud. After their cases were severed, Bowman and McCloud were acquitted and Bumbrey's indictment dismissed.

3. Parts II, III *infra.*

4. Part IV *infra.*

5. Trial Transcript (Tr.) 18–22.

6. Tr. 53–54.

7. Evidence of familiarity included knowledge of the second cash drawer, which was not visible from the customer's side; knowledge of the location of the credit union, which was not indicated by any signs; and, inferably, knowledge that March 10, 1976, was a payday and

that an early morning robbery would yield the most cash. Tr. 22–23, 65, 17.

8. Tr. 29–32.

9. Tr. 139–144.

10. At trial, Jackson in effect recanted his grand jury testimony. He then averred that the discussions at appellant's house had not been about the holdup of the credit union, but had rather been an exaggeration and part of a general talk about crime. Tr. 144. Jackson's grand jury testimony was admitted as substantive evidence pursuant to Fed.R.Evid. 801(d)(1)(A).

11. One major inconsistency arises here. Jackson's grand jury testimony had appellant stating that the late robber was "Mac"—supposedly James McCloud, see note 2 *supra*—while the Government's evidence attempted to identify appellant as the second robber. See text accompanying note 8 *supra*.

"Lathan." [12] The portion of Jackson's grand jury testimony that most strongly tied appellant to the credit union robbery was his statement that appellant "talked about how he had paid his rent up for six months, and how he swung the gun around in people's face and told them, '[t]his is it.' " [13]

The Government also presented the testimony of Special Agent James Murphy of the Federal Bureau of Investigation. Murphy stated that he had met with appellant on two occasions. At the first, appellant allegedly admitted knowing the three other individuals later charged with the robbery [14] but denied personal knowledge of or participation in the crime. At the second meeting, appellant still denied involvement but admitted knowing three days prior to the robbery that it was to be an inside job, that it was set up by Marion Bumbrey, and that it was to take place early in the morning of a payday. [15]

## II. THE CORROBORATION REQUIREMENT

### A. Trustworthiness and the "Corpus Delicti" Rule

Appellant argues that there was insufficient corroboration of his admissions to Murphy and Jackson to support a conviction. The requirement that a verdict of guilt rest on more than unsupported confessions or admissions of the accused has a long history in both English and American law, and it occurs in a variety of forms. [16] Traditionally, its purpose has been to forestall convictions based on confessions to crimes that never occurred. [17]

Under the conventional formulation of the corroboration requirement, the so-called "corpus delicti" rule, the prosecution must introduce independent proof of the corpus delicti of the crime—proof that events comprising the crime actually transpired and that they were occasioned by someone's criminal activity. [18] But the "corpus delicti" rule has not been adopted whole cloth by the federal courts.

The nature of the corroboration requirement in federal courts was set forth in a trio of 1954 Supreme Court cases. [19] What is demanded is that the Government "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. . . . It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." [20] In other words, the adequacy of corroborating proof is measured not by its tendency to establish the corpus delicti but by the extent to which it supports the trustworthi-

---

**12.** Nathan Bowman, see note 2 *supra*, owned a black Cadillac at the time of the holdup. Tr. 121. The alleged getaway car was a black Cadillac. See text accompanying note 6 *supra*. The Government treats the word "Lathan" in the transcript of Jackson's testimony as a transcription misspelling. Supplementary Transcript 25.

**13.** Tr. 143.

**14.** Tr. 87–97.

**15.** *Id.*; see note 2 *supra*.

**16.** See 7 J. Wigmore, Evidence § 2070 (Chadbourn rev. 1978); Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule*, 46 Fordham L.Rev. 1205 (1978), (hereinafter cited as Fordham Note); *Developments in the Law—Confessions*, 79 Harv.L.Rev. 935, 1072–1084 (1966); Comment, *California's Corpus Delicti Rule; The Case for Review and Clarification*, 20 U.C.L.A. L.Rev. 1055 (1973); Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U.Pa. L.Rev. 638 (1955) (hereinafter cited as Pa. Note).

**17.** See *Smith v. United States*, 348 U.S. 147, 153–154, 75 S.Ct. 194, 198, 99 L.Ed. 192, 199 (1954); Fordham Note, *supra* note 16, at 1207–1211.

**18.** See *Forte v. United States*, 68 App.D.C. 111, 115, 119, 94 F.2d 236, 240, 244 (1937); McCormick, Evidence, § 158 at 346–348 (2d ed. 1972).

**19.** *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Smith v. United States*, *supra* note 17; *United States v. Calderon*, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954).

**20.** *Opper v. United States*, *supra* note 19, 348 U.S. at 93, 75 S.Ct. at 164, 99 L.Ed. at 109.

■■■■■■ ■■■

ness of the admissions.[21]  There can be no question that appellant's narration of the credit union robbery has been adequately substantiated under this test.  The Government introduced undisputed evidence that the robbery occurred, with several details matching those of Johnson's admissions.[22]

### B.  *Tying Appellant to the Robbery*

Appellant maintains that Jackson's grand jury testimony did not reflect any admission by appellant that he took part in the holdup of the credit union.[23]  This position, though supported by Jackson at trial,[24] is seriously undercut by the record.  Before the grand jury Jackson was interrogated about the credit union robbery.[25]  The substance of Jackson's testimony was that after the holdup he went to appellant's house for a social visit and that at some point the conversation turned to the credit union robbery.[26]  Jackson reminded appellant that he was to have been a cohort in the robbery, whereupon appellant described it meticu-

lously and bragged of paying six-months rent from the proceeds.[27]  Though not couched as an explicit admission of participation in the credit union robbery, appellant's statement, as related by Jackson, was exactly that when taken in context.[28]

■ Appellant further argues that there is insufficient proof outside the admission that he took part in the holdup.[29]  We perceive no occasion, however, to assess the substantiality of the Government's independent proof of appellant's participation, such as the composite drawing made with the teller's assistance.[30]  For the Supreme Court has made clear that in cases involving a tangible corpus delicti—where the fact that a crime has been committed can be shown without identifying the perpetrator —"there need . . . be no link, outside the confession, between the injury and the accused who admits having inflicted it."[31]  This principle extends to the crime of armed robbery, and we are accordingly constrained to reject appellant's contention.[32]

---

**21.**  See McCormick, *supra* note 18, at 346–349.

**22.**  These include the time of day, the fact that the robbery occurred on a payday and the link to the alleged getaway car.  See note 12 *supra* and accompanying text, and text accompanying note 15 *supra*.  That some details conflicted with the admission, see note 11 *supra*, is not dispositive.  What is called for is substantial independent evidence of trustworthiness sufficient to justify a jury finding that the admission is reliable.  See note 20 *supra* and accompanying test.

**23.**  Brief for Appellant 8–9.

**24.**  Tr. 131–147.

**25.**  At trial, the court asked Jackson what robbery he testified about before the grand jury.  Tr. 150.  Jackson replied that he told the grand jury "about the robbery that the FBI told me about."  *Id.*  The court then asked Jackson "what robbery did the FBI tell you about."  *Id.*  Jackson answered that "[t]hey told me about the credit union robbery."  *Id.*

**26.**  Tr. 131.

**27.**  Tr. 143.

**28.**  See Advisory Committee Note to Fed.R. Evid. 801(d)(2).

**29.**  Brief for Appellant at 6–9.

**30.**  The District Court commented that "these two bits then of independent evidence [the composite drawing and the description Ms. Gilbert gave to the police] I find difficult to characterize as substantial independent evidence corroborating the admissions . . . ."  Tr. 238.

**31.**  *Wong Sun v. United States*, 371 U.S. 471, 489–490 n.15, 83 S.Ct. 407, 418 n.15, 9 L.Ed.2d 441, 456 n.15 (1963).  See, *e. g., Hicks v. United States*, 127 U.S.App.D.C. 209, 214 n.6, 382 F.2d 158, 163 n.6 (1967); *United States v. Braverman*, 376 F.2d 249, 253 (2d Cir. 1967); *United States v. DiOrio*, 150 F.2d 938, 939–940 (3d Cir. 1945); *Caster v. United States*, 319 F.2d 850, 852 (5th Cir. 1963); *United States v. Stabler*, 490 F.2d 345, 349–350 (8th Cir. 1974); *Rodriquez v. United States*, 407 F.2d 832, 834 (9th Cir. 1969); *United States v. Begay*, 441 F.2d 1136, 1137 (10th Cir. 1971).  Contra, *Palacios v. Government of Guam*, 325 F.2d 543, 546 (9th Cir. 1963).

**32.**  It has been suggested that there is no logical justification for excluding the identity of the accused from the corroboration requirement.  See, *e. g., Developments in the Law—Confessions, supra* note 16, 79 Harv.L.Rev. at 1082–1083; Pa. Note, *supra* note 16, 103 U.Pa.L.Rev. at 676–677.  It is said, for example, there may be as much, if not more, reason to expect false confessions when a crime is well publicized as

## C. *Admissions Corroborating Admissions*

Appellant further asserts that in meeting the corroboration requirement the Government cannot use appellant's statements to Agent Murphy to corroborate his admissions to Jackson.[33] He relies on a passage in *United States v. Calderon*,[34] that reads, "[t]he latter [admission], standing uncorroborated, cannot serve to corroborate respondent's other admissions." [35]

■ *Calderon* is inapposite here. There was independent evidence confirming what appellant said to Murphy concerning the time and manner of the robbery.[36] And the Supreme Court has taught that "[a]ll elements of the offense must be established by independent evidence or *corroborated admissions.* " [37] Thus appellant's corroborated admissions to Murphy clearly can be used to corroborate appellant's admissions to Jackson. Moreover, even ignoring appellant's admissions to Murphy, his admissions to Jackson were sufficiently corroborated by independent evidence of the details of the robbery.[38]

when there has been no crime at all. It is urged in addition that society may be harmed less when it convicts a person for a crime that did not occur—which is all the rule protects against when the crime has a tangible corpus delicti, see note 31 *supra* and accompanying text—than when it convicts an innocent person for an actual crime and allows the real criminal to go free. Whatever attraction these arguments might have, we are bound by the Supreme Court's pronouncements and by the long-established holdings of this and other courts. See note 31 *supra* and accompanying text.

33. Brief for Appellants 7–8.

34. *Supra* note 19.

35. 348 U.S. at 165, 75 S.Ct. at 188, 99 L.Ed. at 208.

36. See text accompanying note 15 *supra*.

37. *Smith v. United States, supra* note 17, 348 U.S. at 156, 75 S.Ct. at 199, 99 L.Ed. at 200–201 (emphasis supplied). The identity of the perpetrator of an offense, though an indispensable item of proof by the Government, is not con-

## III. SUFFICIENCY OF THE EVIDENCE

■ Lastly, appellant urges that, even when the admissions are considered, there was insufficient evidence to submit the case to the jury. He challenges particularly the independent evidence identifying him as one of the robbers, suggesting that the composite drawing did not sufficiently resemble him and pointing out that the teller had failed to identify him at a lineup.[39] Weighing the value of evidence is, however, a function exclusively within the province of the jury. "It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury." [40] With appellant's admissions supplementing the other evidence, we cannot say that such a situation existed here.

## IV. DUAL SENTENCES

■ Appellant was sentenced to two concurrent ten-year terms of imprisonment on the two counts upon which he was tried—armed bank robbery under the United States Code and armed robbery under the District of Columbia Code.[41] Our decisions make clear that dual sentencing for the same offense is impermissible.[42] The

sidered an "element" of the crime. See *Forte v. United States, supra* note 18, 68 App.D.C. at 119, 94 F.2d at 244.

38. See note 22 *supra*.

39. Tr. 36. The lineup took place on January 19, 1977, ten months after the robbery.

40. *United States v. Davis*, 183 U.S.App.D.C. 162, 164, 562 F.2d 681, 683 (1977), citing *United States v. Fench*, 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242, *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), and *United States v. Lumpkin*, 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971).

41. See notes 1–2 *supra* and accompanying text.

42. *E. g., United States v. Diggs*, 173 U.S.App. D.C. 95, 108–109, 522 F.2d 1310, 1323–1324 (1975), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Shepard*, 169 U.S.App.D.C. 353, 363–364, 515 F.2d 1324, 1334–1335 (1975). That the sentences are concurrent does not render the error harmless, in view of the collateral consequences that

Government suggests that we vacate the armed robbery conviction,[43] but it is the duty of the trial court "to select the counts on which to impose sentence when the jury returns verdicts of guilty under both statutes."[44]  Accordingly, we remand the case to enable the District Court to vacate the conviction on one of the counts.[45]  In all other respects, the judgment appealed from is affirmed.

*So ordered.*

may attach to multiple convictions.  *See United States v. Canty,* 152 U.S.App.D.C. 103, 115, 469 F.2d 114, 126 (1972).

**43.**  Brief for Appellee 26 & n.10.

**44.**  *United States v. Shepard, supra* note 42, 169 U.S.App.D.C. at 365, 515 F.2d at 1336.  We cannot say with assurance that a ten-year federal sentence has all the same consequences as a ten-year sentence under District of Columbia law.  To boot, the length of each sentence may have been set in light of the other.  *See United*

*States v. Diggs, supra* note 42, 173 U.S.App. D.C. at 109, 522 F.2d at 1324.

**45.**  It may be that the District Court will feel no need to do more than vacate one of the sentences, leaving the other to stand on the record. We do not mean to imply, however, that the court cannot call for a new sentencing investigation and report if so inclined.  That, like any other aspect of the methodology, we leave to the court's discretion.