**UNITED STATES, Petitioner,**

v.

**Eric W. ST. CLAIR, 431 15 1200, Aviation Support Equipment Technician (Mechanical), Second Class (E–5), U.S. Navy, Respondent.**

**Misc. Dkt. No. 84–08.**

U.S. Navy-Marine Corps Court of Military Review.

Dec. 31, 1984.

LT Lance Cantor, JAGC, USNR, Appellate Government Counsel.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

MAJ Michael E. Canode, USMC, Appellate Defense Counsel.

GREGORY, Senior Judge:

Pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, and Rule of Court-Martial 908(b), *Manual for Courts-Martial, 1984,* the Government has filed an appeal requesting this Court to reverse the ruling of the military judge below suppressing the confession of Petty Officer St. Clair made to Special Agent McGlynn of the Naval Investigative Service.

The appellee, Petty Officer St. Clair, allegedly sold 2.43 grams of marijuana to a Naval Investigative Service informant, who in turn notified Special Agent McGlynn of the transaction. Special Agent McGlynn testified at trial that several days after the report to him he interrogated the appellee. He ensured that Petty Officer St. Clair understood his rights against self-incrimination and determined that Petty Officer St. Clair did not wish to consult a lawyer. During the interrogation, Mr. McGlynn also raised the matter of possible restriction of appellee aboard his ship. He testified:

> The only promise that I can recall making to St. Clair was the fact the CORAL SEA placed every crew member who was

questioned by me pertaining to narcotics on restriction and that was brought out during the interrogation of St. Clair. I specifically told him that I could not promise that I could get him off restriction, however, due to the fact that if he cooperated with me, I would contact the legal officer on board the ships. I contacted the legal officer and the legal officer told me that he was still going to place him on restriction, which he was. That's the only promise I made him. (R. 15). On cross-examination, Mr. McGlynn stated, "I told him that I could not promise him anything. I stated I would make a telephone call." (R. 29).

Mr. McGlynn also indicated that he initially advised appellee of all the evidence against him. Petty Officer St. Clair at first denied the allegations made by the NIS informant, but eventually did admit to the offense and, at Mr. McGlynn's request, executed a written sworn statement.

Petty Officer St. Clair testified that he cooperated with Special Agent McGlynn, "Because he said that he had enough evidence on me already that it would be better and to my benefit if I did cooperate with him." (R. 47). Petty Officer St. Clair also testified that he *thought* about Mr. McGlynn's statement concerning restriction to the ship when he decided to make his statement. (R. 47).

The military judge made the following findings of fact in deciding to suppress the appellee's confession:

> This court finds that on 1 May 1984, the defendant was interrogated by NIS Agent Michael C. McGlynn. This was a custodial interrogation, the interrogation took place at an NIS office in Portsmouth, Virginia. No other agent or person was present at the interrogation; the interrogation was not mechanically recorded. The rights portion of Appellate Exhibit 4 was read aloud to the defendant, the defendant initialled each portion of the rights section of Appellate Exhibit 4 and stated he understood these rights. He chose not to consult with counsel or have counsel present during the interview. After the accused initially denied any culpability for the offenses of which he was suspected, he was advised that if he told the truth and cooperated, the agent would contact the ship's legal officer and advise the command that the defendant had been cooperative. The defendant was further advised that it was command policy for a person suspected of the type of offenses concerning which the accused was being interrogated, that that type of person would be placed on immediate restriction at the termination of the interview. The Agent said if the defendant cooperated, he would contact Lieutenant Commander Bryant, the legal officer for the ship, and try to assist the defendant in staying off this restriction. This was an important consideration in the accused's determination to make the statement contained in Appellate Exhibit 4. Based on *United States v. Hansen*, at 45 R. 104, [sic][1] other applicable case law, the Constitution for the United States and the Rule for Court-Martial, I find this to have been an improper inducement and the defense request for relief is accordingly granted.

(R. 54–55).

### Issue Presented

WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN SUPPRESSING THE WRITTEN CONFESSION OF THE ACCUSED AS INVOLUNTARY BECAUSE THE AGENT WHO OBTAINED THE CONFESSION TOLD THE ACCUSED HE WOULD TELL HIS COMMAND JUDGE ADVOCATE THAT THE ACCUSED COOPERATED, AND WOULD ASK IF THE ACCUSED MIGHT NOT BE PLACED ON RESTRICTION.

We will not dispute the military judge's finding that Special Agent McGlynn's remarks concerning pretrial restriction constituted at least *some* inducement for Petty

---

1. *United States v. Handsome,* 21 U.S.C.M.A. 330,   45 C.M.R. 104 (1972).

Officer St. Clair to make his statement. The crucial question is whether he erred as a matter of law in determining that this was an *unlawful* inducement. We believe that he did so err.

Military Rule of Evidence 304(c)(3) defines an "involuntary statement" as one that is "obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." The Drafters' Analysis of the 1980 Amendments sets out examples of what, by itself or in conjunction with others, constitutes an *unlawful* inducement, *i.e., "promises of reward or benefit,* or threats of disadvantage *likely to induce the accused to make the confession or admission."* (Emphasis added).

We do not consider the statements of Special Agent McGlynn concerning the restriction policy aboard the USS CORAL SEA as either a promise or a threat. Rather, it appears more to have been a recitation of what would occur in the normal course of events.

As noted by appellate government counsel, the military judge in this case obviously relied on the following language appearing in *United States v. Handsome, supra,* taken from the United States Supreme Court opinion in *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897):

> But a confession, in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.... A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.

*Handsome,* 21 U.S.C.M.A. at 333, 45 C.M.R. at 107. Government counsel also points out, however, that, as noted by the Second Circuit in *United States v. Ferrara,* 377 F.2d 16 (2d Cir.1967), "[t]hat language has never been applied with ... wooden literalness ...". *Id.* at 17. The *Ferrara* Court observed that the Supreme Court's voluntariness test looks at "whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined' " [emphasis added] [citations omitted]. *Id.,* quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961). *See also, Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (This determination should be reached only after "the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation"). Such an analysis also comports with the observation of the Court of Military Appeals in *United States v. Murphy,* 18 M.J. 220 (C.M.A.1984), that, with respect to the voluntariness of a confession, each case must depend on its own proof.

In the absence of any recent treatment of a similar issue by the military appellate courts, the Government has cited for our consideration a number of Federal decisions which hold that the mere fact that a law enforcement official told the defendant that he would notify the cognizant authorities of his cooperation does not render the defendant's confession involuntary. In *United States v. Robinson,* 698 F.2d 448 (D.C.Cir.1983), it was held that where the defendant claimed that his statement had been elicited because the agent had promised to both inform the prosecutor of his cooperation and not to arrest and charge him that day, the defendant's will had not been overborne, and his confession was therefore voluntary and admissible. Looking at the defendant's age, education, and experience, the *Robinson* court found the defendant capable of voluntarily waiving

his right to remain silent. After noting that no force or coercion had been used, the Court examined the "promises" allegedly made by the Government. The court found that a promise that the defendant's cooperation would be made known was insufficient to overbear his free will. The confession was held by the *Robinson* court to be voluntary. Also, in *United States v. Curtis,* 562 F.2d 1153, 1154 (9th Cir.1978), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978), where the defendant was told that his cooperation would be made known to responsible authorities and where the defendant admitted that he knew that no promise was being made to him, the Court found "[a] simple representation to a cooperating confessor that the fact of his cooperation will be made known to prosecuting authorities is insufficient to render a confession involuntary."

In *United States v. Pomares,* 499 F.2d 1220, 1222–23 (2d Cir.1974) (en banc), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974), the Court found that where a defendant was informed that it would be to his benefit to cooperate after being given his rights, his confession was voluntary. The Court observed:

> Surely it is the duty of law enforcement officers to assemble all available evidence relating to the commission of a crime and this includes such information as a participant may be willing to give. Having fairly and fully advised Pomares of his Constitutional rights, as required by *Miranda,* the agents were free to discuss with Pomares why he should cooperate. It was quite proper in the course of such discussion to mention the situation which Pomares faced and the advantage to him if he assisted the Government. The agents stated facts; they made no misrepresentations. Nothing the agents were shown to have said or done was unfair or overreaching. There was every reason for the agents to act as they did; their conduct did not violate the letter or the spirit of the holding of the Supreme Court in *Miranda.*

Finally, in *United States v. Ferrara, supra,* the Second Circuit determined that, despite the fact that a federal agent told the defendant he felt sure he could get out on reduced bail if he cooperated, the defendant's confession was found to be voluntary. The *Ferrara* case most closely approaches the facts found in the case of Petty Officer St. Clair; both primarily concern pretrial freedom. The inducement in the instant case, however, does not come close to that in *Ferrara* where the federal agent almost equated cooperation with reduced bail.

Appellee in this case is a second class petty officer (E–5), 21 years old at the time of interrogation, and with almost 4 years in the Navy. He was advised by Special Agent McGlynn that no guarantee could be made with respect to restriction, and he apparently believed that Special Agent McGlynn had the case "wrapped up anyway." With this totality of circumstances, any inducement caused by the desire to try and remain off pretrial restriction would clearly have been insufficient to overbear his free will to make or not make a statement to Special Agent McGlynn.

In view of the foregoing, we conclude that the military judge erred as a matter of law in suppressing the appellant's confession on the evidence before him. Accordingly, the Government's appeal is granted, and the ruling of the military judge is reversed. The record of trial is returned to the Judge Advocate General for remand to the trial court for further proceedings not inconsistent with this opinion.

Judge MITCHELL and Judge BARR concur.