**UNITED STATES, Appellant,**

v.

**Charles A. YATES 401 88 9171 Aviation Ordnanceman Third Class (E–4) U.S. Navy, Appellee.**

**Misc. Dkt. No. 86–05.**

U.S. Navy-Marine Corps Court of Military Review.

Decided 8 Aug. 1986.

LT W.A. DURLING, JAGC, USNR, Appellate Government Counsel.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT GARY K. VAN METER, JAGC, USNR, Appellate Defense Counsel.

GRANT, Judge:

The accused was charged at a general court-martial with separate specifications of rape and carnal knowledge and a single specification of sodomy with a child under 16 years of age in violation of, respectively, Articles 120 and 125, Uniform Code of Military Justice (UCMJ). Upon timely motion by trial defense counsel, the trial judge suppressed evidence of the accused's confession admitting to all the elements of the crimes alleged, on grounds that evidence of the identity of the accused as the perpetrator of the crimes was not established by independent evidence aliunde the confession. The Government appealed under Article 62, UCMJ, assigning as error:

> THE MILITARY JUDGE WAS INCORRECT IN HOLDING THAT M.R.E. 304(g) REQUIRED THAT THE IDENTITY OF THE ACCUSED AS THE PERPETRATOR OF THE CHARGED OFFENSES BE PROVEN BY EXTRINSIC EVIDENCE IN ORDER TO SUFFICIENTLY CORROBORATE ACCUSED'S CONFESSION IN THIS CASE.

I

The accused confessed to Naval Investigative Service (NIS) agents on 21 November 1985, at which time he admitted being sexually intimate, both conventionally and orally, with an unknown bar girl in the Philippines during the middle of July 1985 when he was on temporary additional duty (TAD). He further admitted that upon his return to Okinawa, he may have accidentally transmitted gonorrhea to his infant stepdaughter, Carolyn, as he twice masturbated on her stomach and touched her vaginal opening with his erect penis while she was

lying on top of him, although he was not aware of ever having gonorrhea himself and could not offer a definitive explanation for how Carolyn contracted the disease. The accused also admitted that on two prior occasions subsequent to his arrival on Okinawa in 1984, he engaged in oral sexual relations with Carolyn. He attributed all such sexual intimacies to his deteriorating marital relationship and to seeking the love from Carolyn that he could not have from his wife.

The independent evidence corroborating the accused's confession confirmed he was TAD to the Philippines in mid-July 1985; he returned to his home in Okinawa shortly thereafter where his wife and Carolyn resided; the accused's wife took Carolyn to the Naval Hospital, Okinawa, on 9 August 1985, because of a discharge from Carolyn's vagina; Carolyn was diagnosed as having gonorrhea; medical examination revealed a labial tear on Carolyn's vulva; expert testimony concluded that 99 percent of gonorrhea cases are transmitted through penial to vaginal or rectal sexual relations or oral sexual relations and that penetration is not necessary to transmit the disease; semen and other bodily fluids are transmitters of the disease; it is possible for a person to be asymptomatic for gonorrhea yet pass it to someone else; gonococcus bacteria grows only on moist parts of the body, namely the rectum, vagina, urethra, pharynx and mouth; less than 4 percent of persons with the disease falsely test negative; the accused reported for medical treatment on 19 September 1985 complaining of a sore throat but was not specifically tested for gonorrhea because he did not acknowledge any sexual intimacy with an infected person; the accused was diagnosed as having pharyngitis and treated with penicillin; oral gonorrhea manifests itself within two hours to two weeks depending upon individual characteristics; the disease will persist until treated; persons contracting oral gonorrhea may demonstrate symptoms that could be diagnosed as a severe sore throat or pharyngitis; and proper medication normally will effect a cure within 24 hours.

The accused testified on the motion to suppress and repudiated his confession as a fabrication designed to take the blame for transmitting the disease to Carolyn in order to protect his wife from having Carolyn and her other daughter taken by government authorities. The accused denied engaging in any sexual intimacies with Carolyn or with any persons in the Philippines, and further denied ever contracting gonorrhea. He related that upon his return from the Philippines to Okinawa he engaged in sexual relations with his wife and that both he and his wife tested negative for gonorrhea. The accused's wife confirmed she had conventional and oral sexual relations with the accused upon his return from the Philippines and that she tested negative for gonorrhea. She also denied (1) seeking assistance from family advocacy concerning matters growing out of marital problems with the accused, (2) reporting to authorities that her husband had been abusive in their marital relationship, (3) knowing that her husband had engaged in an extramarital affair, and (4) telling a family advocacy counselor that she was sent by God to save her husband. The Government presented rebuttal evidence contradicting such denials by the accused's wife. Further evidence bearing on the credibility of the accused and his wife was introduced to show (1) the accused's two natural sons were taken from his custody and out of the home in which his wife resided by virtue of one of them suffering a severe laceration on his forehead, which, according to the accused's wife, was sustained while the two boys were playing, (2) the accused's wife temporarily lost custody of her two natural daughters, and (3) the accused's wife and her two children are almost totally dependent upon the financial support provided by the accused.

We will begin our analysis of the assignment of error by examining the historical genesis of Military Rule of Evidence (Mil.R. Evid.) 304(g), Manual for Courts-Martial,

United States, 1984 [1]. Paragraph 140*a*, Manual for Courts-Martial, United States, 1951 (MCM, 1951), after setting forth the general rule that "[a]n accused cannot legally be convicted upon his uncorroborated confession or admission," provided that the corroboration requirement is satisfied where there is evidence of record "that the offense charged had probably been committed by someone." The "corpus delicti" rule as stated in MCM, 1951, is widely adopted by federal circuit courts of appeal,[2] and requires independent proof outside the confession that the harm or injury occurred and that it had a criminal origin. *See Manning v. United States*, 215 F.2d 945 (10th Cir.1954). In cases involving a tangible corpus delicti, "[t]here need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it." *Wong Sun v. United States*, 371 U.S. 471, 489 n. 15, 83 S.Ct. 407, 418 n. 15, 9 L.Ed.2d 441, 456 n. 15 (1963). However, a tangible corpus delicti may not in all cases be possible to prove without identifying the accused as the perpetrator. In such cases, a broader rule was adopted in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), which held that

> the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.... It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.

*Opper*, 384 U.S. at 93, 75 S.Ct. at 164, 99 L.Ed. at 108–109. In *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), the Supreme Court, elaborating on *Opper*, stated:

> The corroboration rule, at its inception, served an extremely limited function. In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called corpus delicti. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. But in a crime such as tax evasion there is no tangible injury which can be isolated as a corpus delicti. As to this crime, it cannot be shown that the crime has been committed without identifying the accused. Thus we are faced with the choice either of applying the corroboration rule to this offense and according the accused even greater protection than the rule affords to a defendant in a homicide prosecution, ... or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether. We

---

1. Mil.R.Evid. 304(g) provides:

   *Corroboration.* An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence. Corroboration is not required

   for a statement made by the accused before the court by which the accused is being tried, for statements made prior to or contemporaneously with the act, or for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.

2. *See United States v. Opdahl*, 610 F.2d 490 (8th Cir.1979), *cert. denied*, 444 U.S. 1091, 100 S.Ct. 1056, 62 L.Ed.2d 780 (1980); *United States v. Johnson*, 191 U.S.App.D.C. 193, 196, 589 F.2d 716, 719 (D.C.Cir.1978); *United States v. Begay*, 441 F.2d 1136, 1137 (10th Cir.1971); *Rodriquez v. United States*, 407 F.2d 832, 834 (9th Cir. 1969); *Hicks v. United States*, 127 U.S.App.D.C. 209, 215 n. 6, 382 F.2d 158, 163 n. 6 (D.C.Cir. 1967); *United States v. Braverman*, 376 F.2d 249, 253 (2d Cir.1967); *Caster v. United States*, 319 F.2d 850, 852 (5th Cir.1963).

choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible corpus delicti, where the corroborative evidence must implicate the accused in order to show that a crime has been committed.

*Smith,* 348 U.S. at 153–154, 75 S.Ct. at 197–198, 99 L.Ed. at 199. The *Smith* Court further held:

> In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone, ... and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged.... We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense "through" the statements of the accused.

*Id.,* 348 U.S. at 156, 75 S.Ct. at 199, 99 L.Ed. at 200–201. Although a commentary in Department of the Army Pamphlet No. 27–2, "Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition" (Headquarters, Department of the Army, July 1970), at paragraph 27–10, suggests that the Supreme Court may have abandoned the corpus delicti rule in *Opper* and *Smith,* any question in this regard was resolved in *United States v. Calderon,* 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), decided the same day as *Smith* and *Opper,* and *Wong Sun v. United States, supra,* both of which upheld the continuing validity of the corpus delicti rule. As such we conclude the Supreme Court has not abandoned the corpus delicti rule, but has provided a second approach where the corpus delicti could not be proven independently, and, in such cases, the trustworthiness of the confession can be supplied by independent evidence dovetailing with the admitted facts sufficiently to justify a jury inference of their truth, thereby proving the offense through the statements of the accused.

Recognizing the inflexibility of the corpus delicti rule in cases in which a tangible corpus delicti cannot be proven by independent evidence and the unwillingness of the Court of Military Appeals[3] to adopt the *Opper-Smith* rationale in such cases, the MCM, 1951 rule was revised in paragraph 140*a* (5), Manual for Courts-Martial, United States, 1969 (Revised Edition) (MCM, 1969), as follows:

> (5) *Corroboration of confessions and admissions.* It is a general rule that a confession or admission of the accused cannot be considered as evidence against him on the question of guilt or innocence unless independent evidence, either direct or circumstantial, has been introduced which corroborates the essential facts admitted sufficiently to justify an inference of their truth.

The MCM, 1969 rule, which tracks the *Opper-Smith* language, was substantially restated in Mil.R.Evid. 304(g), *supra.* We need not answer the question of whether Mil.R.Evid. 304(g) was intended to adopt the two-pronged federal approach of (1) preserving the corpus delicti rule and (2) providing for a more flexible rule in accordance with the *Opper-Smith* rationale where a corpus delicti cannot be established by independent evidence, as the evidence in the present case goes far beyond establishing a corpus delicti and, if believed, fortifies the truth of the confession

---

**3.** In *United States v. Mims,* 8 U.S.C.M.A. 316, 24 C.M.R. 126 (1957), the Court of Military Appeals determined that the accused's confession to heroin use was not sufficiently corroborated by needle marks on his arm, concluding that such marks were equally consistent with his innocence by virtue of having been required to submit to blood samples in the course of being treated for a disease. As such, the Court concluded that the needle marks added nothing to the probability that a crime had been committed (corpus delicti), and strictly applied the corpus delicti rule in the 1951 Manual to the exclusion of the *Opper-Smith* rationale in concluding the accused's confession was not sufficiently corroborated.

utilizing only the *Opper-Smith* second prong. However, before identifying the evidence which leads us to this conclusion, we made the following observations, i.e., (1) if Mil.R.Evid. 304(g) is limited to the language of *Opper-Smith* without reference to the two-pronged federal approach, it has adopted the *Opper-Smith* rule out of context and, (2) we believe a persuasive argument can be made that Mil.R.Evid. 304(g) recognized that *Opper-Smith* was designed to give the federal sector more, not less, flexibility in establishing a two-pronged test, and that the revised military rule is broad enough and was designed to emulate the more flexible federal rule, subject to the caveat that under either prong the linchpin consideration is whether the *independent evidence corroborates the essential facts admitted sufficiently to justify an inference of their truth.* Mil.R.Evid. 304(g).

Turning to the evidence of record, we conclude there is independent evidence of a corpus delicti, i.e., that Carolyn unlawfully contracted gonorrhea from someone through sexual intimacy, together with other independent evidence dovetailing with the confession that would directly and circumstantially prove through the confession that the accused: (1) contracted gonorrhea, (2) transmitted the disease to Carolyn upon his return from the Philippines, (3) falsely tested negative for gonorrhea, (4) did not transmit the disease to his wife by virtue of their estrangement, notwithstanding the testimony of the accused and his wife to the contrary, (5) sought treatment for the disease although believing at the time he was suffering from a condition no more serious than a sore throat, and (6) denied having gonorrhea in the course of confessing to the offenses because at the time he believed that he was free of the disease by virtue of falsely testing negative. Although the independent evidence falls short of alone proving the identity of the accused as the perpetrator of the offenses, the independent evidence bolsters the confession and proves through the confession that the accused committed the offenses. No more is required under the *Opper-Smith* ratio-

nale or under the most restrictive interpretation of the revised military rule.

Ultimately, the trier of fact must determine whether the accused's guilt on the whole of the evidence, including his confession, is established beyond a reasonable doubt. The question, however, before the trial judge on the motion to suppress the accused's confession did not require consideration of the ultimate issue and the attendant burden of proof, but whether the independent evidence raised an "inference of the truth of the essential facts admitted," as prescribed in Mil.R.Evid. 304(g)(1). As in *Wong Sun, supra,* we intimate no view as to whether the independent evidence sufficiently corroborates the accused's confession. Such a determination is solely within the province of the trial judge, upon remand, and his decision will not be disturbed on appeal where he has not erred as a matter of law, *United States v. Scholz,* 19 M.J. 837 (NMCMR 1984), and his findings of fact are not wholly unsupported by the evidence, *United States v. St. Clair,* 19 M.J. 833 (NMCMR 1984). We hold only that the trial judge erred as a matter of law in requiring the Government to prove through independent evidence alone the identity of the accused as the perpetrator of the offenses, where the independent evidence, if believed, established the identity of the accused as the perpetrator of the offense through and by dovetailing with the confession, albeit such independent evidence did not itself prove the accused committed the offenses.

Accordingly, we conclude the trial judge erred as a matter of law in suppressing the accused's confession. As such, we reverse the ruling of the trial judge and return the record of trial to the Judge Advocate General of the Navy for remand to the trial court for further proceedings not inconsistent with this opinion.

Chief Judge GORMLEY and Judge RAPP concur.